UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH ANN PEREZ,                                    Case No. 10-14998

        Plaintiff,                              Lawrence P. Zatkoff

vs.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge

        Defendant.

_____/

# REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt.9, 14)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 16, 2010, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Lawrence P. Zatkoff referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability and disability insurance benefits.  (Dkt. 2).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 9, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on October 30, 2006, alleging that she

became unable to work on May 8, 2006. (Dkt. 5-5, Pg ID 103-105). The claim was initially disapproved by the Commissioner on February 23, 2007. (Dkt. 5-4, Pg ID 58-61). Plaintiff requested a hearing and on May 14, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Thomas L. English, who considered the case *de novo*. In a decision dated June 1, 2009, the ALJ found that plaintiff was not disabled. (Dkt. 5-2, Pg ID 27-36). Plaintiff requested a review of this decision on April 20, 2007. (Dkt. 5-4, Pg ID 62). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 5-2, Pg ID 21-22), the Appeals Council, on October 12, 2010 , denied plaintiff's request for review. (Dkt. 5-2, Pg ID 18).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*Perez v. Comm'r*; Case No. 10-14998

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 34 years of age at the time of the most recent administrative hearing.  (Dkt. 5-5, Pg ID 103).  Plaintiff's relevant work history included approximately 16 years as a sales associate and assembly operator.  (Dkt. 5-6, Pg ID 126).  In denying plaintiff's claims, defendant Commissioner considered right shoulder rotator cuff repair, tendinitis of the right elbow, and carpal tunnel syndrome of the right wrist as possible bases of disability.   (Dkt. 5-6, Pg ID 138).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since May 8, 2006.  (Dkt. 5-2, Pg ID 32).  At step two, the ALJ found that plaintiff's degenerative disc disease of the lumber spine, carpal tunnel syndrome of the right wrists, and degenerative joint disease of the rotator cuff were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform any past relevant work.  (Dkt. 5-2, Pg ID 35).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id.*

Report and Recommendation
Cross-Motions for Summary Judgment
*Perez v. Comm'r*; Case No. 10-14998

B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, because each element of the hypothetical does not accurately describe plaintiff in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence.  Specifically, plaintiff argues that the ALJ did not properly evaluate her impairments in the hypothetical question and did not properly consider and evaluate the opinion of her treating physician.  The ALJ concluded that "the only suggestion of disability was provided by treating physician, Dr. Herrick, who provided multiple medical source statements that routinely extended claimant's right hand and arm restrictions to minimal lifting and eventually identified claimant as capable of a right hand only job in September 2006 (Exhibit 3F)."  (Tr. 17).  Plaintiff argues that the ALJ then erred by concluding; "this opinion is given less weight because it is not fully consistent with the medical record and is not very recent."  (Tr. 17).  Plaintiff points out that Dr. Herrick was treating and examining her while she was working and while she was not working.  Throughout his treatment, Dr. Herrick documented positive clinical examination findings that supported the need for plaintiff's restrictions.  (Tr. 157-159, 164, 169, 174, 179-181, 183, 185, 208, 218, 220, 226).  Plaintiff contends that the ALJ erred by summarily discounting Dr. Herrick's opinion by simply stating "it is not fully consistent with the medical record."  According to plaintiff, the ALJ also improperly discounts Dr. Herrick's

opinion because it "is not very recent."  The ALJ asked about the remoteness of

the restrictions and plaintiff's attorney explained "there is no treating physician

that has outlined permanent restrictions. Basically, what would have happened was

the last time she went into the plant, the doctor would have said you need a

left-hand job only and then they put her out the door on Comp and she hasn't been

back into the plant since then so there wouldn't be any."  (Tr. 26)

Plaintiff also argues that this case should be remanded because the ALJ

erred in evaluating and discounting her credibility.  First, the ALJ did not appear

to be satisfied with the alleged onset date.  "There is no medically identifiable

reason for that particular date to be chosen."  (Tr. 17).  However, according to

plaintiff, it is indicated in the Disability Report Adult Form that she stopped

working May 5, 2006 because "my plant physician put me on restrictions but there

was no job available with the restrictions I was on so the plant sent me out."  (Tr.

117).  This is also supported by the medical evidence on May 5, 2006, where the

plant records discuss "[employee] was sent home from medical at the end of her

shift from medical in plant 3 as she couldn't do the job assignment per phone call

to Mr. Kripka at 1545. He [states] there is no job available for her now."  On that

same date, "[employee] saw Dr. Herrick today and gave restrictions," "new

restriction: left hand job only."  (Tr. 179).  The last plant note is from November

14, 2006, wherein Dr. Herrick continues the restriction to only left handed work

and again notes "no job available."  (Tr. 157).

Second, plaintiff says the ALJ inappropriately discounted plaintiff's testimony because she "is not taking any significant pain mediations [sic], has been treated conservatively, and has not had any recent shoulder treatment. This is closely associated with the third factor of numerous gaps in treatment where a significant duration of time passed without any treatment." (Tr. 17).  Plaintiff explained that she was not taking any pain medications because "I found that they don't help. He had me on a nerve pill when I first went in and it did nothing. And I haven't found any that help and another reason is because I don't want to become addicted to anything." (Tr. 27-28).  She has had two surgeries on the right shoulder with the last one occurring in 2007 and there was discussion with the ALJ at trial that monetary issues have been a reason for the lack of specialized treatment.  (Tr. 23, 28)

Finally, plaintiff contends that the ALJ improperly discounted her testimony because she "has been able to perform many activities of daily living and had no difficulty traveling with her husband for a March 2008 fifth anniversary vacation to California – quite a distance to travel for an individual that has alleged total disability." (Tr. 17).  According to plaintiff, the ALJ erred by failing to credit the following testimony.  Plaintiff testified that "the only household chores that I do daily, on a daily basis, is my dishes.  My laundry is backed up. My ironing is

backed up. Dusting I just don't do. Vacuuming, vacuuming gets done when, when we have company coming over which is maybe every other week, every three weeks. I just don't." (Tr. 29). She also testified that she has modified grooming activities. (Tr. 29). Plaintiff testified that she wakes up three to five times per night and "the majority of the time it's pain." (Tr. 31). She testified that she will "nap once or twice a day for an hour each time" "because I'm tired because I don't sleep." (Tr. 32). Plaintiff also says she will spend time "sitting in the recliner off and on throughout the day with [her] feet up to waist level" "because that's the only thing that I found that somewhat relieves some of the pain." (Tr. 32)

Plaintiff points out that when asked to assume "an individual [that] needed to recline with their feet up to waist level or nap at unpredicted points outside [the] typical beaks and lunch periods on a regular basis," the VE confirmed that this would be work preclusive. (Tr. 36). Based on the foregoing, plaintiff asks the Court to reverse the decision denying benefits and remand the case for an award of benefits based on plaintiff's testimony regarding napping and reclining and the above cited response of the VE. In the alternative, plaintiff asserts that this case should be remanded for further proceedings.

C.    <u>Defendant's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ provided for substantial limitations regarding plaintiff's ability to use her right hand by restricting her to

only occasional right hand use and precluding any constant fingering or constant fine dexterity with her right hand.  (Tr. 15).  The Commissioner asserts that the ALJ reasonably found the record did not support more extensive limitations. Specifically, the ALJ reasonably gave less weight to Dr. Herrick's 2006 opinion that plaintiff could only perform left-handed jobs because it was issued three years before the hearing and it was not consistent with the record evidence.  (Tr. 17).  As plaintiff concedes, Dr. Herrick's limitation was not a permanent restriction. Rather, it was a temporary work place restriction issued by a work place physician. (See Tr. 157, 230–34).  The last left-hand only restriction given by Dr. Herrick was issued in November 2006.  (Tr. 157).  Dr. Herrick specifically limited the November 2006 left-arm only restriction to a three-month window that needed reevaluation in December, but no re-evaluation was ever performed.  (Tr. 157). The Commissioner also points out that plaintiff did not receive any further treatment for hand, wrist, or elbow pain until 2008.  (Tr. 295).  Thus, It was reasonable for the ALJ to give less weight to an opinion that was only intended to last for three months and explicitly required re-evaluation in December 2006.  (Tr. 157).

As the ALJ discussed, the opinion of Dr. Herrick was not consistent either with his own findings or other record evidence.  (Tr. 16-17).  In February 2006, x-rays of plaintiff's right hand and wrist showed "radiographically normal" bones,

joint spaces, and surrounding soft tissues. (Tr. 155-56). On physical examination that same month, Dr. Herrick found only minimal swelling of the thenar area (the area at the base of the palm, just below the thumb). (Tr. 203). There was no skin redness (erythema). (Tr. 203). And, both Tinel's and Phalen's signs were negative. (Tr. 203). In May 2006, plaintiff had only slight swelling (edema) of her right wrist. (Tr. 181). Dr. Herrick continued to find she could work with the same restrictions that had been in place since 2002 – jobs lifting less than 10 pounds with her right arm; limited pushing, pulling, and squeezing with her right arm; and no using a torque gun or wrenching with her right hand. (Tr. 161-62, 236). According to the Commissioner, the record belies plaintiff's contention that Dr. Herrick's opinion was supported by positive clinical examination findings as the records cited by plaintiff often demonstrate minimal or no objective clinical findings and, where they do, those findings are inconsistent with Dr. Herrick's extreme limitation precluding any use of her right hand. Three of the cited records had no clinical findings or testing data. (Tr. 159, 169, 174). Many of the records noted only tenderness or slight swelling. (Tr. 179-81, 183, 208). Other cited records preceded plaintiff's alleged onset of disability by as much as four years. (Tr. 218, 220, 206). According to the Commissioner, the remaining clinical findings – tingling of the right wrist (Tr. 185), decreased range of motion of the right shoulder (Tr. 157), positive impingement test (Tr. 164), and a positive

Tinel's sign (detection of irritated nerves) (Tr. 158) – are consistent with the restrictions outlined by the ALJ.

The Commissioner further contends that Dr. Herrick's limitation is also inconsistent with the remainder of the record evidence. Although plaintiff cites to a positive Tinel's sign in October 2006, an August 2008 Tinel's test was equivocal. (Tr. 181). Plaintiff did not complain of any increase in pain when performing wrist and finger activities during that same August 2008 examination. (Tr. 181). Despite a positive impingement test in August 2006, a cervical MRI performed to evaluate possible cervical radiculopathy was negative. (Tr. 277, 280-81, 283). Plaintiff further admitted that she had not sought any treatment for her shoulder since 2007. (Tr. 27). At the time of the hearing, plaintiff had not received any treatment for her hand, wrist, elbow for one year. (Tr. 27). Plaintiff also admitted she did not take any pain medication for her allegedly disabling pain. (Tr. 27). While plaintiff may disagree with the ALJ, the Commissioner contends that the ALJ's findings were well within the zone of reasonable choices. See Mullen v. Bowen, 800 F.2d 535, 595 (6th Cir. 1986). Because the ALJ made a reasoned and reasonable decision based on substantial evidence, the Commissioner asserts that his decision should be affirmed.

Next, the Commissioner argues that the multiple reasons given by the ALJ for discrediting plaintiff's testimony – no pain medication despite allegations of

disabling pain; conservative treatment; sporadic treatment; no medically identifiable reason for her alleged onset date; and daily activities inconsistent with plaintiff's claim of disabling pain – were reasonable and supported by substantial evidence. Considering plaintiff's daily activities, the ALJ specifically noted plaintiff's ability to take a road trip to California as being inconsistent with a claim of total disability.  (Tr. 17).   Plaintiff testified that she had trouble sitting for long periods of time (Tr. 24) and that she had trouble even sitting through a movie because she had to shift around and move a lot.  (Tr. 32).  The Commissioner suggests that, as reasonably found by the ALJ, such statements were inconsistent with plaintiff's 2008 road-trip to California, approximately 5,000 miles and 80 hours round trip.  (Tr. 28-29).  As the ALJ noted, plaintiff's testimony was also inconsistent with her treatment history, including her lack of recent treatment for her shoulder.  (Tr. 17).  At the hearing in May 2009, plaintiff testified that she had pain in her shoulder ranked at an eight on a ten-point scale.  (Tr. 30).  However, plaintiff visited with doctors approximately eight times in 2008, but did not receive any treatment for her shoulder.  (Tr. 28, 277-81, 288-93, 295-96).  Thus, the ALJ reasonably found the absence of any recent treatment for her shoulder along with significant gaps in her treatment history were inconsistent with allegations of disabling conditions.

The ALJ also noted that there was no medically identifiable basis for

plaintiff's alleged onset date of May 8, 2006.  (Tr. 17).  Plaintiff does not dispute

this fact, but explains that she chose that date because there were no longer any

jobs available given her restrictions.  Plaintiff's explanation, according to the

Commissioner, is inadequate because the absence of jobs at her workplace does

not show disability.  Accordingly, the Commissioner asserts that the ALJ's

credibility determination should be upheld because the detailed reasons provided

by the ALJ for discrediting plaintiff were reasonable and supported by substantial

evidence.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

Report and Recommendation
Cross-Motions for Summary Judgment
*Perez v. Comm'r*; Case No. 10-14998

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

In the view of the undersigned, the ALJ gave appropriate weight to Dr. Herrick's 2006 opinion.  Most significantly, Dr. Herrick's opinion specifically related to whether plaintiff could perform any available job at her particular workplace.  Dr. Herrick's opinion did not necessarily limit her from using her right hand/arm in the performance of any and all work available in the economy.  Thus, his opinion had a very limited scope as far as the analysis required to be undertaken by the ALJ in formulating an appropriate RFC.  The ALJ's conclusion that Dr. Herrick's opinion (at least as broadly as plaintiff would like it to be interpreted) is not supported by the medical evidence of record is also supported by substantial evidence.  While it was apparent, and the ALJ accounted for it in his RFC, that plaintiff had some right hand and wrist limitations, the medical evidence of record does not support the severity of limitations she claims.  Specifically, the objective tests and examinations do not support the extreme limitation plaintiff seeks to have imposed (no apparent use whatsoever of her right hand/arm).  While plaintiff points to some evidence in the record showing clinical abnormalities,

there were not significant abnormalities, plaintiff sought very little treatment for her hand/shoulder between 2006 and 2008, she took no pain medications, and she had very little treatment until her 2009 shoulder surgery, which appears to have been largely successful.  While plaintiff suggests that there was some financial inability to obtain treatment, there is no evidence of that in the record.  She regularly sought treatment for other things and there is no mention of any treatment or therapy recommended that she could not afford or that insurance did not cover.  For these reasons, the undersigned concludes that the ALJ's weighing of Dr. Herrick's 2006 opinion was entirely appropriate and supported by substantial evidence.

Likewise, the undersigned concludes that the ALJ's credibility determination, which is entitled to a great deal of deference, is supported by substantial evidence for many of the same reasons.  Plaintiff's lack of use of pain medications, lack of treatment from 2006-2008, and the lack of medical support for her claimed limitations all support the ALJ's determinations.  While plaintiff claims there that she tried many pain medications and they did not work, there is little, if any, support for this claim in the record.  In addition, the ALJ properly relied on plaintiff's daily activities, conservative treatment, unexplained gaps in treatment to support his findings that plaintiff's claimed limitations were not fully credible.  For these reasons, the undersigned finds no basis to disturb the ALJ's

credibility findings.

    D.   <u>Conclusion</u>

After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 2, 2012

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 2, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, Laura A. Sagolla, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov